# EXHIBIT 1

Case 10-17685   Doc 8-1   Filed 04/30/10   Page 1 of 7

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

(Baltimore Division)

In re:                                  *

BALTIMORE AND CHARLES                   *     Case No. 10-17685-JS
ASSOCIATES, LLC,
                                        *     (Chapter 7)
        Alleged Debtor.
                                        *

\* \* \* \* \* \* \* \* \* \* \* \*

### AFFIDAVIT OF BENJAMIN F. MILLER
### IN SUPPORT OF BALTIMORE AND CHARLES ASSOCIATES, LLC'S
### MOTION TO DISMISS THE INVOLUNTARY PETITION

I, BENJAMIN F. MILLER, being over the age of 18 and otherwise competent to testify, affirm as follows:

1. I am the manager of Baltimore Bando, LLC, which is one of two managing members of Baltimore and Charles Associates, LLC ("Baltimore and Charles").

2. In that position, I am responsible for overseeing the operations of Baltimore and Charles. Based on my duties and responsibilities, I have personal knowledge of the facts set forth herein, or I have knowledge of such facts by reference to documents and records maintained by Baltimore and Charles in the ordinary course of business.

3. Baltimore and Charles is a Maryland limited liability company with its headquarters in Baltimore, Maryland.

4. Baltimore and Charles, a Maryland limited liability company, owns the fee simple interest and/or the leasehold interests in the land, and the historic

building located thereon, at 2 North Charles Street, Baltimore, Maryland 21201 (the "Property").

5. The Hotel Monaco Baltimore operates a hotel in the Property (the "Hotel") and there is a restaurant and several office tenants in the Property. Baltimore and Charles has more than twelve undisputed, bona fide creditors whose claims arise from the operations of the Hotel and the office space in the Property.

6. On June 15, 2007, Baltimore and Charles, as owner of the Property, and James M. Jost & Company, Inc. ("Jost"), as Design-Builder, entered into a "Standard Form of Agreement between Owner and Design-Builder" (the "Design-Build Agreement") to renovate and convert a portion of the Property into a Monaco brand hotel as detailed therein

7. Petitioners Dimensional Metals & Refinishing, Inc. ("Dimensional") and Klima Electric Company, Inc. ("Klima") are not parties to the Design-Build Agreement and any work that they might have performed on the Property could only be at the request of Jost. Their work, as detailed in their invoices, was not at the request of Baltimore and Charles.

8. The renovation covered by the Design-Build Agreement occurred and the Hotel opened for business in August, 2009. Under the terms of the Design-Build Agreement, the Project was to be substantially complete by April 2009. Jost did not obtain a certificate of occupancy for the Hotel until August 2009. As a result of Jost's tardy completion of the Project, Baltimore and Charles suffered financial damages. Baltimore and Charles is currently evaluating the extent and amount of such damages. The amount of damage suffered by Baltimore and Charles as a result of the delayed

completion is likely in excess of the approximately $620,000 claimed by Jost in the Petition.

9. Baltimore and Charles, and its agents, have carefully reviewed each and every invoice attached to the Petition.

10. The Dimensional invoices and the Klima invoices that are attached, and which are addressed to Baltimore and Charles, all relate to work that was required to be performed under the Design-Build Agreement.

11. The invoices were not for work and/or services and/or supplies that were requested, authorized or approved by Baltimore and Charles, with two possible exceptions.[1]

12. James Jost, president of Jost, has acknowledged in separate meetings and/or telephone calls with one or more of me, Mr. Eugene Mayer, and the Property lender, Capmark Bank (the "Bank"), that an amount equal to the entire Guaranteed Maximum Price (which includes the Design-Builder's Fee), and Work Order No. 1, have been paid to Jost, except for the "Final Payment," as defined in Section 5.5.1 of the Design-Build Agreement (the "Final Payment").

13. To date, Jost has not provided releases and waivers from Jost's subcontractors and materialmen and can not do so because it has not paid all of its subcontractors and materialmen.

14. In November, 2009, James Jost, in a telephone call with the Bank, attempted to convince the Bank to release the Final Payment to Jost even though Jost admittedly had not, and could not, supply the required releases and waivers. The Bank

---

[1] The Klima invoices numbered 11174 for $620 and numbered 11076 for $860 were for work directly requested by the Management Company for Baltimore and Charles.

3

refused to do so until Jost provided the required releases and waivers. Other than the Final Payment, the entire Maximum Guaranteed Price, plus Work Order No. 1, has been paid to Jost.

15. On January 15, 2010, approximately nine months after the Certificate of Occupancy for the Hotel was obtained, Jost submitted to Baltimore and Charles, for the first time, a large, 10-inch stack of documents consisting of a series of alleged change orders with dates going back to 2007 and totaling almost $6,000,000. Of the almost $6 million in additional payments requested, almost one-third was represented to be cost overruns incurred by a subcontractor which is owned by Jost.

16. None of these change orders were previously sent to Baltimore and Charles and none had been signed by Baltimore and Charles or its "Designated Representative," David Polatnick of PZ Architects, LLC. Moreover, Jost agreed in a "Contractor's Consent to Assignment of Contractor's Agreement," that it was required to obtain the Bank's written consent before performing "work pursuant to any change order." I am unaware of any written approval from the Bank for the work allegedly performed pursuant to the change orders submitted to Baltimore and Charles on January 15, 2010.

17. Baltimore and Charles informed Jost in January, 2010, when it was first presented with the change orders, that it did not agree to the alleged change orders and that since Jost did not comply with the terms of the Design-Build Agreement, Baltimore and Charles was not obligated to pay the additional amounts claimed. In response, Jost alleged that the changes were approved by Jost's project architect, William M. Collins, III of Collins and Kronstadt, and that such approval was legally sufficient.

4

18. I, Mr. Mayer, and others, on behalf of Baltimore and Charles, have clearly told representatives of Jost that Baltimore and Charles contests whether Jost is entitled to any payments in excess of what they have already been paid. Further, Baltimore and Charles never agreed to the approximate $6.0 million package of change orders, and is not obligated to pay under the purported change orders submitted by Jost after the fact.

19. In one instance, Baltimore and Charles did agree to some additional work on the Property. In Work Order No. 1, dated May 5, 2009, Baltimore and Charles and Jost followed the requirements of the Design-Build Agreement and executed a binding change order.

20. The additional work that was agreed to in Work Order No. 1, which cost almost an additional $1 million, was paid in full by Baltimore and Charles by a wire transfer dated May 5, 2009, the same day that the additional work was approved.

21. On or about February 5, 2010, Jost filed a complaint in the Circuit Court for Baltimore City (Case No. 24-C-10-001122) seeking a mechanic's lien and approximately $6 million in compensatory damages.[2]

22. The complaint was served upon Baltimore and Charles on March 17, 2010.

23. On or about April 8, 2010, before Baltimore and Charles had an opportunity to answer the complaint and file its counterclaims, the Petitioners filed the Petition.

---

[2] A number of subcontractors also filed mechanic's lien actions, but Dimensional and Klima did not.

24. Based on mechanic's liens actions filed by subcontractors and communications form subcontractors, Baltimore and Charles has reason to believe that Jost failed to properly allocate funds to its subcontractors.

I solemnly affirm, under penalties of perjury, that the contents of the foregoing Affidavit are true and correct to the best of my knowledge information and belief.

Dated: April 29, 2010

Benjamin F. Miller