Entered: March 15, 2011
Signed: March 14, 2011

**SO ORDERED**



**ROBERT A. GORDON**
**U. S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

In re:                                          *

BALTIMORE AND CHARLES                *        Case No:  10-17685-RAG
ASSOCIATES, LLC                                         (Chapter 11)
                                                *
        Debtor                                  *
                                                *

    *      *      *      *      *      *      *      *      *      *      *      *

<u>ORDER CONFIRMING THE DEBTOR'S PLAN OF LIQUIDATION</u>

       Baltimore and Charles Associates, LLC, the debtor and debtor-in-possession

herein (the "Debtor") filed Debtor's Plan of Liquidation under Chapter 11 of the Bankruptcy

Code on December 3, 2010, docket 132; filed Debtor's Amended Plan of Liquidation under

Chapter 11 of the Bankruptcy Code on January 21, 2011, docket 188; and filed two Lines

modifying definitions in Debtor's Amended Plan of Liquidation under Chapter 11 of the

Bankruptcy Code on January 25, 2011, docket 193, and on January 28, 2011, docket 196

(collectively, the foregoing are referred to herein as the "Plan").  The Debtor also filed a

Disclosure Statement for Debtor's Plan of Liquidation under Chapter 11 of the Bankruptcy Code

on December 4, 2010, docket 134.  Notice thereof, and of a hearing thereon, was duly given to

all parties in interest.  After due notice, the Disclosure Statement was considered by the Court at

a hearing on January 18, 2011 where all parties in interest were given an opportunity to be heard

and the Court did hear and consider objections to the disclosure statement.  Thereafter, the

Disclosure Statement was amended by an Amended Disclosure Statement Supporting Debtor's

Amended Plan of Liquidation under Chapter 11 of the Bankruptcy Code on January 21, 2011,

docket 189 ( the "Amended Disclosure Statement").  Notice of the Amended Disclosure

Statement and an opportunity to object to it and to be heard on any objections was duly given by

the Court and served on all parties in interest.  The Amended Disclosure Statement was approved

by this Court by order entered on January 28, 2011, docket 195 (the "DS Approval Order").  On

January 29, 2011 the Debtor served on all parties in interest the DS Approval Order, the

Amended Disclosure Statement, the Plan, Ballots for voting on the Plan and the Notice required by Bankruptcy Rule 2002. The Debtor filed a Tabulation of votes on and results of voting with respect to the Plan (the "Voting Declaration") on February 23, 2011, docket. 212 attesting to the tabulation of all ballots received from holders of claims in Classes 2, 3, 4, 5, 6, 7, 8 and 9. The Voting Declaration demonstrates that the Plan was accepted in accordance with the §1125 of the Bankruptcy Code. The Court held the hearing on Confirmation of the Plan on February 25, 2011 and, at that hearing, reviewed and considered the entire record of the case, including the Plan, the Amended Disclosure Statement, the DS Approval Order, the Voting Declaration, the testimony presented at the Confirmation Hearing and all related evidence and documents, all objections; and heard the arguments of counsel. After due deliberation and sufficient cause appearing therefor, it is hereby found and determined that:

<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>[1]

   A. <u>Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>. This Court has jurisdiction over the Debtor's Chapter 11 Case under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. §§ 157(b)(2) over which this Court has exclusive jurisdiction.

   B. <u>Judicial Notice</u>. The Court takes judicial notice of the docket of this Chapter 11 Case maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during this Chapter 11 Case.

   C. <u>Burden of Proof</u>. The Debtor, as proponent of the Plan, has met its burden of proving the elements of § 1129 of the Bankruptcy Code by a preponderance of the evidence.

   D. <u>Notice of Confirmation Hearing</u>. Notice of the Plan Confirmation Hearing complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed thereto in the Plan.

the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code and the Bankruptcy Rules and no other or further notice is required.

     E.    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  The Plan's classification scheme is reasonable and proper.  The Plan designates claims and interests into the following classes: Class 1 (Administrative Creditors); Class 2 (Priority Creditors); Class 3 (Capmark Note Holder); Class 4 (National Penn Bank); Class 5 (Allowed Unsecured Claims (other than holders whose claims are classified in Classes 6, 7 or 8)); Class 6 (Allowed Unsecured Claims to be Assumed by Kimpton Fee Purchaser); Class 7 (Mechanic's Lien Claims against the Property); Class 8 (Disputed Unsecured Claim of Jost); and Class 9 (Managers Claims); and Class 10 (Interests in Debtor)  Valid business, factual, and legal reasons exist for separately classifying the various classes of claims and interests created under the Plan, and such classes do not unfairly discriminate among holders of claims and interests.  The number of classes reflects the diverse characteristics of the claims and interests, and the legal rights under the Bankruptcy Code of each of the holders of claims or interests within a particular class are substantially similar to other holders of claims or interests within that class.  Thus, the Plan satisfies §§ 1122 and 1123(a)(1) of the Bankruptcy Code.

     i.    <u>Specify Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  Article III of the Plan specifies that Class 1 (Administrative Creditors) and Class 2 (Priority Creditors) are unimpaired under the Plan.  Thus, the requirements of § 1123(a)(2) of the Bankruptcy Code are satisfied.

     ii.    <u>Specify Treatment Of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  Article III of the Plan designates Class 3 (Capmark Note Holder), Class 4 (National Penn Bank), Class 5 (Allowed Unsecured Claims (other than holders whose claims are classified in Classes 6, 7 or 8)), Class 6 (Allowed Unsecured Claims to be Assumed by Kimpton Fee Purchaser), Class 7 (Mechanic's Lien Claims against the Property), Class 8 (Disputed Unsecured Claim of Jost), Class 9 (Managers Claims), and Class 10 (Interests) as impaired and specifies the treatment of

claims and interests in those classes.  Thus, the requirements of § 1123(a)(3) of the Bankruptcy Code are satisfied.

iii.    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  The Plan provides for the same treatment by the Debtor for each claim or interest in each respective class unless the holder of a particular claim or interest has agreed to a less favorable treatment of such claim or interest.  Claims and interests are separately classified due to the distinctive basis for each such claim or interest.  Thus, the requirements of § 1123(a)(4) of the Bankruptcy Code are satisfied.

iv.    <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.  Article IV of the Plan provides adequate and proper means for the Plan's implementation including:  (x) approval of the conversion (the "Condominium Conversion") of the historic building (the "Building") located at 2 North Charles Street, Baltimore, Maryland (the "Property") owned by Debtor into the Hotel Unit,  the Office Unit and the Retail Units for the consideration stated in the Plan; (y) funding of the Plan from the consideration received from the Hotel Sale Agreement (including the gift provided by the Kimpton Fee Purchaser as part of such consideration, (the "Gift")); and (z) the liquidation of all assets of the Debtor's Estate. The Plan thus sets forth adequate means for implementation and therefore satisfies § 1123(a)(5) of the Bankruptcy Code.

v.    <u>Non-Voting Securities (11 U.S.C. § 1123(a)(6))</u>.  Article V of the Plan provides for a full and complete liquidation of the Debtor's Estate and the dissolution and termination of its existence as a limited liability company, therefore, it is unnecessary for the Debtor's articles of organization or operating agreement to be amended to comply with the provisions of § 1123(a)(6) of the Bankruptcy Code.  Section 1123(a)(6) of the Bankruptcy Code is thus not applicable.

vi.    <u>Selection of Officers and Directors (11 U.S.C. § 1123(a)(7))</u>.  Article V of the Plan properly and adequately discloses that the Debtor's current member and its managers shall continue to manage the Debtor's affairs until dissolution.  Thus, the requirements of § 1123(a)(7) of the Bankruptcy Code are satisfied.

vii.    <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>.  As permitted by § 1123(b)(1) of the Bankruptcy Code, Article III of the Plan provides for the impairment of certain classes of claims and interests, while leaving other classes unimpaired.  The Plan thus modifies the rights of the holders of certain claims and interests and leaves the rights of others unaffected.

viii.    <u>Settlement, Releases, Injunctions and Exculpations</u>.  Pursuant to § 1123(b)(3) of the Bankruptcy Code, the releases, discharges, exculpations and injunctions set forth in the Plan shall be, and hereby are, approved as fair, equitable, reasonable and in the best interests of the Debtor, the Estate, the creditors, and holders of interests.

ix.    <u>Compliance with Bankruptcy Rule 3016</u>.  The Plan is dated and identifies the Debtor entity submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the Court satisfies Bankruptcy Rule 3016(b).

x.    <u>Compliance with Bankruptcy Rule 3017</u>.  The Debtor has given notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d).

xi.    <u>Compliance with Bankruptcy Rule 3018.</u>  The solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018.  The Plan was transmitted to all creditors entitled to vote on the Plan, sufficient time was prescribed for such creditors to accept or reject the Plan, and the solicitation and voting procedures comply with § 1126 of the Bankruptcy Code, thereby satisfying the requirements of Bankruptcy Rule 3018.

F.    <u>Impaired Classes That Have Voted to Accept the Plan</u>.  As set forth in the Plan, holders of claims in Class 3 (Capmark Note Holder), Class 4 (National Penn Bank), Class 5 (Allowed Unsecured Claims (other than holders whose claims are classified in Classes 6, 7 or 8)), Class 6 (Allowed Unsecured Claims to be Assumed by Kimpton Fee Purchaser), Class 7 (Mechanic's Lien Claims against the Property), Class 8 (Disputed Unsecured Claim of Jost), Class 9 (Managers Claims), and Class 10 (Interests) are impaired and constitute all of the impaired classes.  As set forth in the Voting Declaration, the holders of claims in each class voted, on a consolidated basis, in excess of the statutory thresholds in § 1126(c) of the

Bankruptcy Code, to accept the Plan.  Thus, at least one  impaired class of claims has voted to accept the Plan, determined without including any acceptance of the Plan by any insider, as required by §1129(a)(10).

G.    Classes Conclusively Presumed to Have Accepted the Plan.  The holders of claims in Class 1 (Administrative Creditors) and Class 2 (Priority Creditors) are unimpaired under the Plan, and, pursuant to § 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan.

H.    Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan complies with the applicable provisions of the Bankruptcy Code including §§ 1122 and 1123, and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtor as a proponent of the Plan, thereby satisfying § 1129(a)(1) of the Bankruptcy Code.

I.    Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The Debtor has complied with all applicable provisions of the Bankruptcy Code, as required by § 1129(a)(2) of the Bankruptcy Code, including § 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018.  The Disclosure Statement and the procedures by which the ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted and in accordance with §§ 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018 and the Disclosure Statement Order.  Votes with respect to the Plan were solicited in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.  The Debtor, its sole member and each of its respective managers, officers, employees, agents, members and professionals, acting in such capacity, have acted in "good faith," within the meaning of § 1125(e) of the Bankruptcy Code.

J.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying § 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, the Court has been adequately advised and has considered the totality of the circumstances surrounding the negotiation and formulation of the Plan.  The Plan is the product of arm's-length

negotiations with third parties, including the Kimpton Fee Purchaser, Kimpton Hotel & Restaurant Group, LLC, KHP II Baltimore, LLC, and each of their direct and indirect parents, subsidiaries and affiliates (together, "Kimpton" or the "Kimpton Entities"), and further including creditors and various other parties in interest. The Debtor filed its Chapter 11 Case and proposed the Plan with legitimate and honest purposes including, among other things, the maximization of value to all creditors.

K. <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. All payments made or to be made by the Debtor for services or for costs and expenses in or in connection with the Plan and incident to the Chapter 11 Case, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying § 1129(a)(4) of the Bankruptcy Code.

L. <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtor has complied with § 1129(a)(5) of the Bankruptcy Code. The Plan has disclosed that the Debtor's current member and its managers will continue to manage the Debtor's affairs until dissolution. The continuation of the management by Debtor's member and its managers is consistent with the interests of holders of claims against and interests in the Debtor and with public policy.

M. <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Debtor's Plan does not provide for any rate change that requires regulatory approval. Section 1129(a)(6) of the Bankruptcy Code is thus not applicable.

N. <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies § 1129(a)(7) of the Bankruptcy Code. The evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that holders of claims in impaired classes have accepted the Plan or will receive or retain under the Plan, on account of such claim, property of a value, as of the date of entry of this Confirmation Order (the "Effective Date"), that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

O.    <u>Rejection by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  No Class of Claims has voted to reject the Plan.

P.    <u>Treatment of Administrative, Priority and Tax Claims (11 U.S.C. § 1129(a)(9))</u>.  The treatment of administrative claims and priority creditors pursuant to Article III of the Plan satisfies the requirements of §§ 1129(a)(9)(A), (B) and (C) of the Bankruptcy Code.

Q.    <u>Impaired Classes (11 U.S.C. § 1129(a)(10)</u>.  The Plan satisfied the elements of § 1129(a)(10) because all impaired Classes have voted to accept the Plan.

R.    <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  The Plan is a plan of liquidation and thus satisfies the requirements of § 1129(a)(11) of the Bankruptcy Code.

S.    <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>.  All fees payable under § 1930 of Title 28, United States Code, as determined by the Court, have been paid or will be paid on the Effective Date, thus satisfying the requirements of § 1129(a)(12) of the Bankruptcy Code.

T.    <u>Non Applicability of 11 U.S.C. § 1129(a)(13),(14),(15) and (16)</u>.  Based upon the proffers of the Debtor at the Confirmation Hearing, 11 U.S.C. § 1129(a) (13), (14), (15) and (16) are not applicable to the Plan.

U.    <u>Principal Purpose (11 U.S.C. § 1129(d))</u>.  Based upon the proffers of the Debtor at the Confirmation Hearing, the principal purpose of the Plan is not (i) the avoidance of taxes or (ii) the avoidance of § 5 of the Securities Act.  No governmental unit has objected to the confirmation of the Plan on any such grounds.  The Plan therefore satisfies the requirements of § 1129(d) of the Bankruptcy Code.

V.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before the Court in this Chapter 11 Case, the Debtor, its agents, managers, professionals, advisors, and other representatives have acted in good faith within the meaning of § 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of

acceptances of the Plan and their participation in the activities described in § 1125 of the Bankruptcy Code, and are entitled to the protections afforded by § 1125(e) of the Bankruptcy Code and the injunction and exculpation provisions set forth in the Plan. The solicitation of acceptances on the Plan complied with the solicitation procedures in the Disclosure Statement Order.

    W. <u>Implementation</u>. All documents necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith and at arm's-length and shall, upon execution, but subject to the occurrence of the Effective Date, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

    X. <u>Findings Pursuant to §1146</u>. The Court finds that all of the instruments and other documents to be recorded pursuant to the Plan and this Confirmation Order, specifically including, without limitation, all such documents (the "Unit Transfer Documents") relating to the transfers of the Hotel Unit and the balance of the Hotel Property to Kimpton (as and on the terms provided in the Hotel Sale Agreement), and of the Office Unit and the Retail Units and any related personality to the Office Developer (collectively, the "Unit Transfers"), the Condominium Documents, and any other documents to be recorded in connection with the transactions provided for or contemplated by the Hotel Sale Agreement the Office PSA, and the Unit Transfer Documents (collectively "Plan Transfers") are transfers under a plan confirmed under §1129 of the Bankruptcy Code. Accordingly, it is ordered that the Plan Transfers may not be taxed under any law imposing a stamp tax or similar tax.

    Y. <u>Arm's-Length Transactions; Hotel Sale and Office Sale</u>. The Hotel Sale Agreement was negotiated, proposed and entered into by the Debtor and the Kimpton Fee Purchaser, without collusion, in good faith and from an arm's-length bargaining position. No higher or better offer for the Hotel Property has been received. In view of the very large disparity between the combined appraised fair market values of the Hotel Property, the Office Unit and the Retail Units, and the much greater amount due on the Capmark Loan which those properties secure (and which loan is now held by a Kimpton Entity), no higher or better offer for

the Hotel Property (or, for that matter, for all of the properties combined), could realistically be anticipated, and consequently the disposition of the Hotel Property (and of the other properties being transferred) pursuant to the Plan represents the highest and/or best value recoverable by the Estate for those assets.  Kimpton is not an "insider" of the Debtor, as that term is defined in § 101(31) of the Bankruptcy Code.  Neither the Debtor nor Kimpton has engaged in any conduct that would cause or permit the Hotel Sale Agreement, or the consummation of the transactions contemplated thereby, to be avoided, or costs or damages to be imposed, under Bankruptcy Code § 363(n).  Specifically, neither the Kimpton Fee Purchaser, nor any other Kimpton entity, has acted in a collusive manner with any person and the sale and purchase price was not controlled by any agreement among bidders.  The Office PSA was negotiated, proposed and entered into by the Debtor and the Office Developer, without collusion, in good faith and from an arm's-length bargaining position.  The Office Developer is not an "insider" of the Debtor, as that term is defined in § 101(31) of the Bankruptcy Code.  Neither the Debtor nor the Office Developer has engaged in any conduct that would cause or permit the Office PSA to be avoided under Bankruptcy Code § 363(n).  Specifically, neither the Office Developer, nor any other Office Developer entity, has acted in a collusive manner with any person.

Z.    <u>Good Business Reasons for Hotel Sale</u>.  The Debtor has articulated a good business reason for the transfer of the Hotel Property to the Kimpton Fee Purchaser.  The Hotel Sale is in the best interest of the Debtor's Estate.  There has been adequate disclosure of the Hotel Sale.  The consideration given by the Capmark Note Holder and the Kimpton Fee Purchaser for the Hotel Sale represents fair and reasonably equivalent value under both the Bankruptcy Code and the Uniform Fraudulent Transfer Act, and given the appraisal compared to the existing secured debt, any conceivable increase in price if the Hotel Unit or the balance of the Hotel Property were sold in any other manner would redound solely to Capmark Note Holder, which has consented to the transfer under the terms of the Hotel Sale Agreement.

AA.    <u>Good Business Reasons for Transfer of Office and Hotel Units</u>.  The Debtor has articulated a good business reason for the transfer of the Office and Retail Units to

the Office Developer and the transfer of the Office and Retail Units is in the best interests of the Debtor's Estate.  The Residual Receipts Note and the Office Developer's assumption of certain of the Managers Claims against the Debtor's Estate is adequate consideration for the Office Developer's acquisition of the Office and Retail Units and the resulting benefits to the Debtor's Estate far outweigh any alternative where such claims were not waived and the Office and Hotel Units were foreclosed upon by the Capmark Note Holder in partial satisfaction of its debt or sold to a third party for a price that generated proceeds that would be payable to the Capmark Note Holder.

BB.    <u>Avoidance and Successor Liability</u>.  Neither the transfer of the Units or the other Hotel Property nor any term of the Unit Transfer Documents (i) constitutes an avoidable transfer or is subject to rejection under the Bankruptcy Code or under applicable bankruptcy or non-bankruptcy law and (ii) except as otherwise specifically set forth in the Unit Transfer Documents, subjects, or will subject, Kimpton or the Office Developer to any liability for any liabilities of the Debtor in any way relating to or arising from the operation of the Debtor's business prior to the closing of the Unit Transfers or by reason of such transfers under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee or vicarious liability.

CC.    <u>No Merger</u>.  The transactions contemplated by the Unit Transfer Documents do not constitute a de facto merger or a de jure merger of the Debtor and either Kimpton or the Office Developer.

DD.    <u>Due and Proper Notice of Unit Transfers</u>.  The Debtor gave due and proper notice of the transactions contemplated by the Unit Transfer Documents to each party entitled thereto.

EE.    <u>Assumption and Rejection of Executory Contracts and Leases (11 U.S.C. § 1123(b)(2))</u>.  Pursuant to Article IX of the Plan, as of the Effective Date and pursuant to the

Confirmation Order, the Debtor shall assume the following contracts and leases (collectively, the "Assumed Contracts"):  (a)(i) that certain Master Lease, dated as of June 12, 2008, between Debtor, as landlord and B&C Master Tenant, LLC, as master tenant, as amended (the "Master Lease"), (ii) the Ground Leases, as defined in the Plan, and (iii)  the parking contract with Park America, Inc., each of which shall be assigned to the Kimpton Fee Purchaser, or its designee, pursuant to terms of the Hotel Sale Agreement; and (b) the leases listed on Exhibit A to the Plan and the Office PSA, which shall be assigned to the Kimpton Fee Purchaser (or its designee) pursuant to the Hotel Sale Agreement, or to the Office Developer pursuant to the Office PSA, as the case may be..  On the Effective Date, all executory contracts and unexpired leases between the Debtor and any third party, other than those which are Assumed Contracts, shall be deemed rejected.

   FF. <u>Satisfaction of Confirmation Requirements</u>.  The Plan satisfies the requirements for confirmation set forth in § 1129 of the Bankruptcy Code and Article IV of the Plan.

   GG. <u>Retention of Jurisdiction</u>.  The Court may properly retain jurisdiction over the matters set forth in Article XI of the Plan and/or § 1142 of the Bankruptcy Code.

   HH. <u>Waiver of Bankruptcy Rule 3020(e)</u>.  Under the circumstances, it is appropriate that the fourteen-day stay imposed by Bankruptcy Rule 3020(e) be waived.

   II. <u>Release</u>.  The releases given by the Debtor under the Plan are made in good faith, are in the best interest of the Debtor's Estate, and are fair and necessary because, among other things, without the releases the Kimpton Fee Purchaser would not have agreed to enter into the Hotel Sale Agreement and fund the Gift, National Penn would not have agreed to waive a portion of its claim, and the Managers would not agree to waive a portion of its claim such that the Debtor would otherwise be unable to consummate the Plan.

<u>ORDER</u>

IT IS HEREBY ORDERED THAT:

      1.    <u>Findings of Fact and Conclusions of Law; Defined Terms</u>.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference at though fully set forth herein.  Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed thereto in the Plan.

      2.    <u>Confirmation</u>.  Pursuant to § 1129 of the Bankruptcy Code, the Plan, and each of its provisions is hereby CONFIRMED.  Pursuant to § 1142(b), the Debtor is hereby authorized and directed to implement the Plan in accordance with the terms thereof,  and to take any and all actions contemplated to be taken under the Plan, including to execute and deliver, and take such action as is necessary to effectuate the terms of, all contracts, instruments, releases, agreements, and documents contemplated by the Plan, and to effectuate the transfers of all property as provided in the Plan and to satisfy any lien as provided in the Plan, whether or not the same is specifically approved herein.

      3.    <u>Objections Resolved or Overruled</u>.  All objections, responses, statements and comments, if any, in opposition to the Plan, other than those withdrawn with prejudice, waived, or settled prior to, or on the record at, the Plan Confirmation Hearing, shall be, and hereby are, overruled in their entirety.

      4.    <u>Condominium Conversion and Unit Transfers</u>.  The Debtor is hereby authorized and directed to perform and complete the Condominium Conversion.  The Unit Transfer Documents are hereby approved and the Debtor is hereby authorized and directed to perform and complete the Unit Transfers as therein described.  The Unit Transfers and all of the terms and conditions and transactions contemplated in the Unit Transfer Documents are hereby authorized and approved pursuant to the Bankruptcy Code.  The Debtor shall take all other actions necessary to implement the treatment of the Class 3 and Class 4 claims.

      5.    <u>Hotel Sale Agreement</u>.  The Hotel Sale Agreement and all of the terms and conditions and transactions contemplated in the Hotel Sale Agreement are hereby authorized and

approved pursuant to the Bankruptcy Code.  The Debtor is hereby authorized and directed to perform and complete the Hotel Sale Agreement and to sell the Hotel Property pursuant to the Hotel Sale Agreement and Sections 363 and 365 of the Bankruptcy Code, free and clear of all interests within the meaning of Section 363(f) of the Bankruptcy Code and free of any lien pursuant to Section 1123(a)(5)(D) of the Bankruptcy Code, other than the Permitted Exceptions (as defined in the Hotel Sale Agreement).  All documents provided for in the Hotel Sale Agreement are hereby approved and the Debtor is hereby authorized and directed to perform and complete the transfers as and when described therein.  The Assumed Contracts shall be assumed by the Debtor and, effective on the Hotel Sale Date, its interests therein shall be assigned to the Kimpton Fee Purchaser, or its designee, and the Office Developer, as applicable, and shall continue in full force and effect in accordance with their terms.  The Debtor shall take all other actions necessary to implement the Hotel Sale Agreement.

6.   Office Purchase and Sale Agreement.  The Office PSA and all of the terms and conditions and transactions contemplated in the Office PSA are hereby authorized and approved pursuant to the Bankruptcy Code.  The Debtor is hereby authorized and directed to perform and complete the Office PSA.  All documents provided for in the Office PSA are hereby approved and the Debtor is hereby authorized and directed to perform and complete the transfers as and when described therein.  The Assumed Contracts relating to the Office Unit and the Retail Units shall be assumed by the Debtor and, effective on the settlement of the Office Unit and the Retail Units (the "Office Closing") its interests therein shall be assigned to the Office Developer, or its designee and such shall continue in full force and effect in accordance with their terms. The Debtor shall take all other actions necessary to implement the Office PSA.

7.   Unit Transfers; No Avoidance.  The Unit Transfers made in conjunction with this Confirmation Order are or, when made, will (a) be legal, valid, and effective transfers of the Units, (b) vest  good and legal title in and to the Units and the Hotel Property in the respective transferees free and clear of all liens, charges, claims, encumbrances, equity interests and other interests, except as otherwise expressly provided in the Plan or this Confirmation

Order, (c) not constitute avoidable transfers under the Bankruptcy Code or under other applicable bankruptcy or nonbankruptcy law, (d) not subject any party to the Unit Transfer Documents to any liability by reason of such transfer under the Bankruptcy Code or under other applicable nonbankruptcy law, whether presently known or unknown, including without limitation claims for any liabilities of the Debtor in any way relating to or arising from the operation of the Debtor's business prior to the closing of the Unit Transfers or by reason of such transfers under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee or vicarious liability, and (e) are for good consideration and value. The failure to specifically include any particular provision of the Unit Transfer Documents in this Confirmation Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the Unit Transfer Documents and each and every provision, term and condition thereof be authorized and approved in its entirety.

8. <u>Effect on Federal, State, etc. Agencies</u>. This Confirmation Order shall be binding upon and govern the conduct of all such federal, state, and local government agencies or departments, including any filing agents, filing officers, title agents, recording agencies or offices, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Property. Each and every federal, state, and local governmental agency, recording office or department and all other parties, persons or entities are hereby directed to accept for recordation this Confirmation Order, and any and all documents or instruments necessary or appropriate to effectuate the transactions contemplated by this Order, the Plan, the Condominium Documents, the Hotel Sale Agreement, the Office PSA, and all Unit Transfer Documents, as conclusive evidence of the free and clear and unencumbered transfer of title.

9.    <u>Assumed Contracts; Adequate Assurance</u>.  The Debtor is hereby authorized and empowered to assume and assign to the Kimpton Fee Purchaser (or its designee) and the Office Developer, respectively, each of the Assumed Contracts that is to be assigned to such parties as set forth in, and in accordance with, the terms and conditions of, the Hotel Sale Agreement and the Office PSA.  The assumption and assignment of the Assumed Contracts pursuant to the terms of the Plan is integral to the Unit Transfers and is in the best interests of the Debtor and its Estate, creditors and all other parties-in-interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor.  Except as otherwise provided in the Plan or in this Confirmation Order, the assumption and assignment shall be free and clear of all liens, claims, interests, encumbrances and other charges that any other party to the Assumed Contract shall have (collectively, the "Charges"), pursuant to § 363(b) and (f) and 365(a), (b) and (f) of the Bankruptcy Code.  Kimpton and the Office Developer have provided adequate assurance of their future performance under the Assumed Contracts within the meaning of §§ 365(b)(l)(c) and (f)(2)(B) of the Bankruptcy Code.  Any counterparty to any of the Assumed Contracts that has not objected to the assumption and assignment to the Kimpton Fee Purchaser or the Office Developer of the applicable Assumed Contract, or that has withdrawn its objection, is deemed to have consented to the assumption and assignment of the Assumed Contracts.  The Assumed Contracts will remain in full force and effect for the benefit of the Kimpton Fee Purchaser (or its designee) and the Office Developer.  Upon closing of the Hotel Sale Agreement and the Office PSA, the Debtor, the Kimpton Fee Purchaser (or its designee) and the Office Developer shall cooperate with each other and execute such additional documents as may be reasonably required to effect the transactions contemplated hereby and the Debtor is authorized, empowered and directed to execute such documents and do such other things as may be necessary to implement and effectuate the assignment and assumption.  Pursuant to Section 365(f) of the Bankruptcy Code, no section of any Assumed Contract that purports to prohibit, restrict or condition the Debtor's assignment of any Assumed Contract shall have any force or effect with respect to the assignments authorized by this Order; and the tenants of any leases

shall accept, attorn to, and otherwise honor the assignment of the Assumed Contracts hereby ordered.  The Court retains jurisdiction over the Debtor, the Kimpton Fee Purchaser (or its designee) and Office Developer and all parties asserting Charges in order to implement and effectuate the provisions of the Confirmation Order.

10.    Gift from Kimpton Fee Purchaser.  Provided that the closing of the Hotel Sale is consummated in accordance with the Hotel Sale Agreement, the Gift shall be funded on the Hotel Sale Date as part of the consideration to be paid by the Kimpton Fee Purchaser in connection with the closing of the Hotel Sale as contemplated by the Hotel Sale Agreement.

11.    Taxation of Transfers.  Pursuant to § 1146 of the Bankruptcy Code, any and all of the instruments and other documents to be recorded pursuant to the Plan, specifically including, without limitation, the Unit Transfer Documents, this Confirmation Order, the Condominium Documents, the Hotel Sale Agreement, and the Office PSA, and in each case, any other documents or instruments to be recorded in connection therewith, shall be fully exempt from any stamp or recordation tax, real estate transfer tax, sales and use tax or similar tax.  All filing or recording officers (and any other person with authority over any of the foregoing), wherever located and by whomever appointed, shall accept for filing and recordation any and all of the instruments and other documents pursuant to the Plan, including, without limitation, this Confirmation Order, the Unit Transfer Documents, the Condominium Documents, the Hotel Sale Agreement, and any documents in connection therewith, and the Office PSA, and any documents in connection therewith, without the payment of any transfer or recordation tax or other taxes. The Court shall retain specific jurisdiction with respect to these matters.

12.    Good Faith Purchaser.  For value described in the Hotel Sale Agreement and the Office PSA, respectively: (i) the Kimpton Fee Purchaser (or any designee acquiring an interest in the Hotel Unit and/or the Hotel Property) is hereby determined and declared to be a good faith purchaser of the Hotel Unit and the Hotel Property from the Debtor, and (ii) the Office Developer is hereby determined and declared to be a good faith purchaser of the Office Unit, the Retail Units and personality from the Debtor.

13.     <u>Liquidation of Assets</u>.  Upon confirmation hereof, the Debtor is hereby ordered pursuant to § 1142(b) to execute or deliver any instrument required to effect a transfer of any property dealt with in the Plan and to perform any act that is necessary for the consummation of the Plan.

14.     <u>Employment of Professionals</u>.  The Debtor is hereby permitted to employ such professionals as it deems necessary and beneficial, including real estate brokers and appraisers, former or present counsel, and financial advisors who shall be compensated at their customary professional rates and reimbursed for reasonable expenses from or by non-Debtor parties.

15.     <u>Consolidation of Funds</u>.  On the Effective Date, all funds of the Estate not currently held by the Debtor shall hereby be delivered to the Debtor, c/o Lawrence J. Yumkas, Esquire, Logan, Yumkas, Vidmar & Sweeney, 2530 Riva Road, Suite 400, Annapolis, Maryland 21401 for deposit into escrow and held for disposition pursuant to the Plan.

16.     <u>Closing of the Chapter 11 Case</u>.  When all disputed claims filed against the Debtor have become allowed claims or have been disallowed by final order, or at such earlier time as the Debtor deems appropriate, the Debtor will hereby seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

17.     <u>Bar Date for Filing Proofs of Claim Relating to Rejection of Executory Contracts</u>.  Claims arising out of the rejection of an executory contract, as defined in the Plan, pursuant to Section 9.1 of the Plan must be filed with the Bankruptcy Court no later than thirty (30) days after the Confirmation Date.  Any claims not filed within such applicable time period will be forever barred from assertion against the Debtor and/or the Estate.

18.     <u>Jurisdiction of Bankruptcy Court</u>.  Until the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Debtor and the Estate.  Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matters set forth in Article XI of the Plan,

and pursuant to this Confirmation Order, and the Debtor shall perform and wind up its affairs as provided in the Plan.

19.    <u>Binding Effect</u>.  Except as otherwise provided in § 1141 of the Bankruptcy Code, on and after the Effective Date, the provisions of the Plan hereby bind any holder of a claim against, or interests in, the Debtor and their respective successors and assigns, whether or not the holder of the claim has timely filed a proof of it claim, the claim or interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.  Further, this Confirmation Order is binding on (x) the trustee in the event of (a) conversion of any of the Debtor's Chapter 11 Case to Chapter 7 or (b) appointment of a Chapter 11 trustee, and (y) any United States bankruptcy court in the event the venue of this Chapter 11 Case is transferred to a bankruptcy court other than the Bankruptcy Court.

20.    <u>Interference with Plan</u>.  All holders of a debt, claim or interest, along with their respective present or former assignees, employees, agents, officers, directors or principals, be, and the same hereby are, hereby enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

21.    <u>Plan Injunction</u>.  In consideration for all consideration provided in the Plan by the Released Entities, including, without limitation, the Gift and the other consideration provided in the Hotel Sale Agreement, the consideration provided in the Office PSA, the waiver by the Capmark Note Holder of its full claim amount as to all Persons other than the Kimpton Fee Purchaser (or its designee), and its permitting and or directing the transfers of the Office Unit and the Retail Units free of its lien, the waiver by National Penn of its full claim amount, the waiver by the Managers of their full claim amount, and except as specifically provided to the contrary in the Plan, all holders of a debt or claim against the Debtor or its property are permanently enjoined from: (x) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) to enforce the Claim against: (i) the Debtor or any property of the Estate; (ii) any Debtor Affiliate; (iii) any of the Kimpton

Entities, (iv) any co-obligor with the Debtor; (v) the Capmark Note Holder; (vi) the Guarantors; (vii) National Penn Bank; (viii) the Office Developer, and (ix) the Managers or any of their respective directors, officers, employees, agents or members or any property of any of the foregoing or any direct or indirect successor in interest to any of the foregoing or any property of any such successor (the foregoing shall be collectively called the "Released Entities"); (y) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order relating to the claim, or any guarantees of the claim, against any of the Released Entities; (z) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind relating to the claim or any guarantees of the claim or any guarantee of the claim, against any of the Released Entities; (aa) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the fullest extent permitted by applicable law; (bb) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order relating to the Claim, or any guarantees of the Claim, against any of the Released Entities; (cc) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind relating to the Claim or any guarantees of the Claim, against the Released Entities; and (dd) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

22.    <u>Exculpation of Exculpated Entities</u>.  Except as specifically provided to the contrary in the Plan, the Debtor, any Debtor Affiliate, the Kimpton Entities, any co-obligor with the Debtor, the Capmark Note Holder, Capmark Bank, National Penn Bank, the Office Developer and the Managers, and each of them, and any of their respective directors, officers, employees, members or agents (the "Exculpated Entities") shall be exculpated of any liability to any entity for any act taken or omitted to be taken in connection with, or subsequent to, the commencement of the Chapter 11 Case, the formulation, preparation, dissemination,

implementation, confirmation or approval of the Plan, the Hotel Sale Agreement, the Office PSA or any compromises or settlements contained therein, any disclosure statement related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the transactions set forth in the Plan or in connection with any other proposed plan (the "Chapter 11 Actions"). Notwithstanding the foregoing, this Court shall have and retain exclusive jurisdiction to hear and determine any Chapter 11 Action. Each of the Exculpated Entities shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities during the Chapter 11 Case and under the Plan.

23.    <u>Capmark, Kimpton, National Penn and Office Developer Releases</u>. Except as otherwise provided in the Plan, this Confirmation Order or in any agreements relating to the Plan, Kimpton, the Capmark Note Holder and National Penn shall be released from any claims by any person, including the Debtor, and any borrowers and guarantors of the Capmark debt and the National Penn debt, relating to the Capmark Loan, National Penn Loan, and any and all payments received by them under the respective loans, the Kimpton Operating Agreement, the Assumed Contracts and any obligations relating in any way to the historic tax credits relating to the Hotel; provided, however, for avoidance of doubt, neither this provision nor any other provision of the Plan or of this Confirmation Order shall effect (a) a release as to the Kimpton Fee Purchaser (or its designee that acquires the Hotel Property) from liability under the Capmark Loan, nor (b) a release or discharge of the lien securing the Capmark Loan as to the Hotel Unit or the Hotel Property. The releases set forth in this paragraph 23 shall be effective as to (A) Kimpton and the Capmark Note Holder on the Hotel Sale Date, and (B) National Penn when payment of the Class 4 Payment shall have occurred, all as provided in the Plan and the Office Developer when the Office Closing shall have occurred.

24.    No Successor Liability. The transactions consummated pursuant to the Hotel Sale Agreement, the Office PSA, the Unit Transfers, any related agreements, and the Plan, do not constitute a *de facto* merger, or a merger between or among any of the Debtor, any Debtor

Affiliate, Kimpton and/or the Office Developer.  Neither Kimpton nor the Office Developer is a

"successor", and shall not be deemed a successor, to the Debtor or its Estate by reason of any

theory of law or equity, and neither shall assume, nor be deemed to assume, or in any way be

responsible for any liability or obligation of any of the Debtor and/or its Estate, pursuant to the

Unit Transfer Documents or otherwise, including, but not limited to, under any bulk sales law,

doctrine or theory of successor liability, or similar theory or basis of liability except for liabilities

arising under the Assumed Contracts on and after the date of closings on the Unit Transfers as

expressly provided in the Unit Transfer Documents.  On and after the Effective Date, all persons

and entities, including governmental units, are permanently and forever barred, restrained and

enjoined from asserting any claims, enforcing remedies, or commencing or continuing in any

manner any action or other proceeding of any kind against either or both Kimpton and the

Officer Developer under any theory of successor liability, merger, de facto merger, mere

continuation, substantial continuity or similar theory.

        25.   <u>Modification of Plan</u>.  After the entry of this Confirmation Order, the

Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with

§ 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any

inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent

of the Plan.  A holder of an allowed claim or interest that is deemed to have accepted the Plan

shall be deemed to have accepted the Plan as modified if the proposed modification does not

materially and adversely change the treatment of the claim or interest of such holder.

        26.   <u>Authorization of Managers</u>.  All actions contemplated by the Plan shall be

deemed authorized and approved in all respects by this Confirmation Order and the Managers of

the Debtor shall be authorized and directed, in the name of and on behalf of the Debtor, to

execute, deliver, file, certify, attest to or record any contracts, deeds, instruments, releases,

indentures and other agreements or documents, and take such actions, as may be necessary or

appropriate to effectuate and  evidence the terms and conditions of the Plan.  The Managers shall

not be required to execute any other or further documents to authorize any of the transactions provided for by the Plan, but may do so, at their option.

27.    Satisfaction, Discharge, etc. of Debts, Claims, etc.  Except to the extent provided otherwise in the Plan or in this Confirmation Order, all debts of and claims against the Debtor, including, but not limited to, demands and liabilities that arose before the entry of this Confirmation Order, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, shall be, and they hereby are, ordered to be deemed fully satisfied, discharged, waived and released in exchange for the treatment of such claims under the Plan to the fullest extent provided under § 1141 of the Bankruptcy Code.  The foregoing shall be effective as to debts, claims, demands, and liabilities or interest against or of the Debtor regardless of whether a proof of claim or interest therefore was filed, whether or not it is a secured claim or a priority claim, whether it is an Allowed Claim or Interest, or whether the holder thereof votes to accept or reject the Plan.  This Confirmation Order shall be effective as a determination that, as of the settlement of the Unit Transfers (as to each such Transfer, the "Closing") and except as otherwise provided in the Plan or in this Confirmation Order, all interests of any kind or nature whatsoever in the Property of the Estate prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described in the Plan shall be effected free and clear of any and all such interests.  Following the Closing, no holder of a claim against or an interest in the Property of the Estate of any nature shall interfere with Kimpton's (including any of its designees), or the Office Developer's title to or use and enjoyment of their respective Units based on or related to such claim or interest.  On the Effective Date, as to every discharged claim or interest, any holder of such claim or interest shall be precluded from asserting against the Debtor or any property of the Estate, any other or further claim or interest based upon any document, instrument, act, omission, transaction or other activity of any kind or nature which occurred before the Effective Date.

28.    Sales of Property.  Any and all sales of property of the Estate set forth in the Plan, or pursuant to the Plan, shall be, and they hereby are, ordered to be  approved, effective

and binding on all persons and entities; the Court finding that it has jurisdiction under §§ 1334(a) and (b) of Title 28 of the United States Code to approve the sales set forth in the Plan pursuant to § §1123(b), 362 and 105 of the Bankruptcy Code; the sales are supported by adequate consideration; are fair, equitable, reasonable; are in the best interests of the Debtor, its Estate, creditors and equity holders and all parties in interest; and the record of the Confirmation Hearing and this Chapter 11 Case are sufficient to support entry of this Confirmation Order approving the sales.

29.    <u>Third Party Execution, etc., of Documents and Actions</u>.  All Persons that are dealt with under the Plan are hereby directed to execute, deliver, file and record any document, and take any action necessary or appropriate to implement, consummate and otherwise effect the Plan in accordance with its terms in all material respects, and all such Persons shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan.

30.    <u>No Stay of Confirmation Order</u>.  Pursuant to authority given to this Court to order otherwise, the Confirmation Order shall not be subject to any stay and shall be effective immediately upon entry; specifically the stays otherwise imposed by Bankruptcy Rules 3020(e), 6004(h), 6006(d), and 7062 are not applicable to this Confirmation Order.  The Debtor is authorized to consummate the Plan, and perform all transactions contemplated therein, immediately upon entry of the Confirmation Order.

31.    <u>Notice of Entry of Confirmation Order</u>.  Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), notice of the entry of the Confirmation Order shall be mailed to all Persons on the Service List attached to this Order which Service List includes the creditors, equity security interest holders, other parties in interest, parties to assumed leases and other contracts,  and  any identified entity subject to an injunction.  The Debtor shall complete such within five (5) Business Days of the date that the Confirmation Order is entered by the Court.  From and after the date the Confirmation Order is entered by the Court, notices of appearances

and demands for service filed with the Bankruptcy Court after such date shall not be effective.

No further notices shall be required to be sent to any entities or persons.


cc:    Lawrence J. Yumkas, Esquire
Logan, Yumkas, Vidmar & Sweeney, LLC
2530 Riva Road, Suite 400
Annapolis, Maryland  21401

Lawrence P. Block, Esquire
Stinson Morrison Hecker
1150 18th Street, NW, Suite 800
Washington, D.C.  20036

Deborah H. Devan, Esquire
Brian M. Boyle, Esquire
Neuberger, Quinn, Gielen, Rubin & Gibber
One South Street, 27th Floor
Baltimore, Maryland  21202-3282

Darek Bushnaq, Esquire
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland  21202

Alan D. Eisler, Esquire
Meyers Eisler, LLC
11140 Rockville Pike, Suite 570
Rockville, Maryland  20852

Morton A. Faller, Esquire
Stephen A. Metz, Esquire
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
12505 Park Potomac Avenue, 6th Floor
Potomac, Maryland  20854

Byron L. Huffman, Esquire
Byron L. Huffman, P.C.
P. O. Box 369
Columbia, Maryland  21045

C. Kevin Kobbe, Esquire
DLA Piper LLP (US)
6225 Smith Avenue
Baltimore, Maryland  21209

Katherine A. Levin, Esquire
Office of U.S. Trustee
101 West Lombard Street, Suite 2625
Baltimore, Maryland  21201

Kimberly Stephens, Esquire
Comptroller of Maryland
301 West Preston Street, Room 410
Baltimore, Maryland  21201

Lucas F. Webster, Esquire
Huddles Jones Sorteberg & Dachille, P.C.
10211 Wincopin Circle, Suite 200
Columbia, Maryland  21044

Mark S. Goldstein, Esquire
Alan Mark, Esquire
Paley Rothman
4800 Hampden Lane, 7th Floor
Bethesda, Maryland  20814

Michael P. Darrow, Esquire
221 Duke of Gloucester Street
Annapolis, Maryland  21404

Glenn Solomon, Esquire
Offit Kurman, P.A
8 Park Center Court, Suite 200
Owings Mills, Maryland  21117-3754

Gary Huggins, Esquire
P. O. Box 4002
Frederick, Maryland   21701

Attached Service List

**END OF ORDER**

Newmarket International
c/o John S. Fellows
75 New Hampshire Avenue
Portsmouth, NH 03801
Creditors' Committee Member

Clevenger Corporation
c/o Clifton L. Clevenger, III
10718 Tucker Street
Beltsville, MD 20705
Creditors' Committee Member

DCI-Design Communications
c/o Robert Torres
6851 Jericho Turnpike, Suite 260
Syosset, NY 11791
Creditors' Committee Member

Klima Electric Co., Inc.
c/o John J. Klima, Jr.
3 Pinewood Road
Baltimore, MD 21222
Creditors' Committee Member

MDU Enterprises, Inc. dba Bulk TV
c/o Brian Madigan
8537 Six Forks Road, Suite 100
Raleigh, NC 27615
Creditors' Committee Member

Securities and Exchange
Commission
The Mellon Independence Center
701 Market Street
Philadelphia, PA 19106-1532

653 Eleventh Avenue, LLC
653 Eleventh Avenue
New York, NY 10036

AC Beverage
1993-7 Moreland Parkway
Annapolis, MD 21401

ADP, Inc.
P. O. Box 9001007
Louisville, KY 40290-1007

Alban CAT
P O. Box 64251
Parkville, MD 21234

ANA Painting
7820 Marlboro Pike
Forestville, MD 20747

Andrew Freeman and Company,
Inc.
101 Townsend Street, Suite 303
San Francisco, CA 94107

Aquatic Impressions, LLC
13 Morn Mist Court
Parkville, MD 21234

Auto-Chlor System
8912 Yellow Brick Road
Rosedale, MD 21237

Avero
235 Park Avenue South
New York, NY 10003-1405

B&C Master Tenant, LLC
c/o Judy Miles, Esquire
Kimpton Hotels & Restaurants
222 Kearny Street, Suite 200
San Francisco, CA 94108

Ballard Spahr Andrews & Ingersoll,
LLP
300 East Lombard Street
Baltimore, MD 21202-5506

Baltimore Area Convention and
Visitors
100 Light Street
Baltimore, MD 21202

Baltimore Sun
P. O. Box 415215
Boston, MA 02241-5215

Bay Associates Environmental, Inc.
P. O. Box 21009
Catonsville, MD 21228-0509

Bunting Door & Hardware
9351 G Philadelphia Road
Rosedale, MD 21237

Buy Efficient, LLC
120 Vantis, Suite 310
Aliso Viejo, CA 92656

Cambridge Hotel, LLC
25 Edwin H Land Boulevard
Cambridge, MA 02141-2236

Carper Company
132 North El Camino Real, Suite
387
Encinitas, CA 92024-2801

Chief II Chicago Hotel, LLC
225 North Wabash Avenue
Chicago, IL 60601-2404

Chief II Salt Lake Hotel, LLC
One Financial Plaza, Suite 1700
Hartford, CT 06103

Cintas
976627 Eagle Way
Chicago, IL 60678

City of Baltimore
Department of Finance
200 Holliday Street
Baltimore, MD 21202

Clearwest VII Seattle Owner
1100 Fifth Avenue
Seattle, WA 98101

Clearwest VII Seattle Owner
1100 Fifth Avenue
Seattle, WA 98101

CLPF - Bismarck Hotel Operating
171 West Randolph Street
Chicago, IL 60601-3199

CLPF-Old Town Operating Co.
480 King Street
Alexandria, VA 22314-3102

Club Minibar Inc.
P. O. Box 884901
San Francisco, CA 94188-4901

Condustrial, Inc.
6929 Golden Ring Road
Rosedale, MD 21237

D.F. Smith, Inc.
114 Holsom Way
Glen Burnie, MD 21060

David Phelps Photography
6305 Yucca Street, Suite 601
Los Angeles, CA 90028

DC Four Lessee, LLC
1430 Rhode Island Avenue NW
Washington, DC 20005-5401

DC One Lessee LLC
1733 N Street NW
Washington, DC 20036-2801

DC Three Lessee LLC
1315 16th Street NW
Washington, DC 20036-2205

Deeken & Hunt Weber, Inc.
461 2nd Street
San Francisco, CA 94107

Dimensional Metals & Refinishing,
Inc.
P. O. Box 22055
Baltimore, MD 21203

Ecessa Corp.
2950 Xenium Lane North, Suite 104
Minneapolis, MN 55441

Epic Hotel, LLC
270 Biscayne Boulevard Way
Miami, FL 33131

EROCA
4017 Elmwood Drive
Alexandria, VA 22303

Facility Engineering
630 Main Street
Reisterstown, MD 21136

Federal Express
P. O. Box 371461
Pittsburgh, PA 15250-7461

Fireline
4506 Hollins Ferry Road
Halethorpe, MD 21227

Fitness Resource, Inc.
632 Grant Street
Herndon, VA 20170

Full House Marketing Solutions
635 First Street West
Sonoma, CA 95476

Thomas C. Dame, Esquire
Gallagher, Evelius & Jones
218 North Charles Street, Suite 400
Baltimore, MD 21201

Grainger
5959 West Howard Street
Niles, IL 60714

Griffin Capital (Palomar) MLC
P. O. Box 2407
Manhattan Beach, CA 90267

Guestmark International
3 Commerce Park
P. O. Box 929
East Hampstead, NH 03826

Hamco DC
10900 Hanna Street, Suite A
Beltsville, MD 20705-2133

HD Supply Facilities Maintenance,
Ltd.
P. O. Box 509058
San Diego, CA 92150

Hospitality Services, Inc.
244 Madison Avenue
New York, NY 10016

Innerworkings, Inc.
P. O. Box 100612
Pasadena, CA 91189

J.F. Johnson Lumber Company,
LLC
8200 Veterans Highway
Millersville, MD 21108

James M. Jost & Company, Inc.
7120 Minstrel Way
Columbia, MD 21045

Judy Miles, Esquire
General Counsel/Executive VP
Kimpton Hotels & Restaurants
222 Kearny Street, Suite 200
San Francisco, CA 94108

Kane Hospitality
3636 Pennsy Drive, D1
Hyattsville, MD 20785

KG Technology, LLC
222 Kearny Street, Suite 200
San Francisco, CA 94108

KHP Washington Hotel, LLC
2121 P Street NW
Washington, DC 20037-1010

KHPG Park Ave, LLC
70 Park Avenue
New York, NY 10016

KHRG, LLC
222 Kearny Street, Suite 200
San Francisco, CA 94108

Knowland Group, Inc.
P. O. Box 476
Lewes, DE 19958

Linda Elmer Designs
339 South Hicks Street
Philadelphia, PA 19102

Massachusetts Mutual Life
Insurance Co.
1295 State Street
Springfield, MA 01111-0001

N. Ginsburg & Son, Inc.
10709 Gilroy Road
Hunt Valley, MD 21031

Natura Water, Inc.
P. O. Box 602208
Charlotte, NC 28260

Newmark Media
Department 1384
Denver, CO 80291

Newmarket Delphi
75 New Hampshire Avenue
Suite 300
Portsmouth, NH 03801

NLP Enterprises, Inc.
11422 Reisterstown Road
Owings Mills, MD 21117

Otis Elevator Company Northeast
Region
4999 Fairview Avenue
Linthicum Heights, MD 21090-1405

Party Rentals
275 North Street
Teterboro, NJ 07608

PC Mall
2555 West 190th Street
Torrance, CA 90504

Perfect Wedding Guide
P. O. Box 445
Parkton, MD 21120-0445

Phoenix Electric
P. O. Box 742
Bel Air, MD 21014

Prestige Lane - Beekley Corp.
P. O. Box 369
Bristol, CT 06011

Profiles, Inc.
3000 Chestnut Avenue
Baltimore, MD 21211

R.W. Smith & Company
P. O. Box 51847
Los Angeles, CA 90051

S. Freedman & Sons, Inc.
P. O. Box 1418
Hyattsville, MD 20785

Sandy Hillman Communications,
LLC
1122 Kenilworth Drive
Towson, MD 21204

Sangoma Spirits & Cocktails
830 Bush Street
San Francisco, CA 94108

Sessa Sheet Metal Contractors, Inc.
529 North Haven Street
Baltimore, MD 21205

Shepherd Electric Supply
7401 Pulaski Highway
Rosedale, MD 21237

Softbrands
800 LaSalle Plaza
Minneapolis, MN 55402

Stacy Zarin Goldberg Photography
18263 Rolling Meadow Way
Olney, MD 20832-1789

Stanley Security Solutions
6161 East 75th Street
Indianapolis, IN 46250

Stillwater Interactive
P. O. Box 885
Santa Monica, CA 90406

Sysco
P. O. Box 1099
Jessup, MD 20794

Tariff Building Associates, LP
222 Kearny Street, Suite 200
San Francisco, CA 94108-4537

The Trident Group
820 Eastern Boulevard
Essex, MD 21221

Trimergence
220 Montgomery Street, Suite 315
San Francisco, CA 94104

Valcourt Building Services
1621 North Kent Street, Suite 1101
Arlington, VA 22209

Vero Hotel Management, LLC
2655 North Ocean Drive, Suite 310
West Palm Beach, FL 33404

Vis-a-Vis Creative Concept, Inc.
2315 North Southport
Chicago, IL 60614

Waterview Hotel, LLC
1121 19th Street North
Arlington, VA 22209

West End Productions
230 West End Avenue, 4E
New York, NY 10023-3662

Wheeler Bros. Holdings, LLC
c/o Bill Wheeler
30 South 17th Street
Philadelphia, PA 19103

Naka, Huttar & Oldhouser
Suite 520, 2 North Charles Street
Baltimore, MD  21201

Inner Harbor Dental Associates P.A.
Suite 130, 2 North Charles Street
Baltimore, MD  21201

Branch Banking and Trust Company
Attn: Real Estate Services
Suite 100, 2825  Reynolda Road
Winston-Salem, NC  27106

Franklin & Prokopik, P.C.
Suite 600, 2 North Charles Street
Baltimore, MD  21201

AGM Financial Services, Inc.
Suite 300, 2 North Charles Street
Baltimore, MD  21201

Office of the U.S. Trustee
Garmatz Federal Courthouse
101 West Lombard St, Suite 2625
Baltimore, MD  21201-2668

Comptroller of Maryland
Compliance Division – Room 410
c/o Kimberly B. Stephens, Esquire
301 West Preston Street
Baltimore, MD  21201-2305

Capmark Bank
c/o Joseph O'Neil, Esquire
Montgomery McCracken Walker
123 South Broad Street, 24th Floor
Philadelphia, PA  19109-1023

Benjamin F. Miller & Eugene Mayer
c/o Deborah H. Devan, Esquire
One South Street
27th Floor Suite 570
Baltimore, MD  21202-3282

PCF Management, Inc.
c/o Byron L. Huffman, Esquire
Byron L. Huffman, P.C.
P. O. Box 369 Suite 2625
Columbia, MD  21045-0369

B&O Hotel/Office, LLC
c/o Mark S. Goldstein, Esquire
4800 Hampden Lane, 7th Floor
Bethesda, MD  20814-2930

Clevenger Corporation
c/o Lawrence P. Block, Esquire
1150 18th Street, N.W., Suite 800
Washington, D.C.  20036-3845

Movanti Investors, LLC
c/o Alan D. Eisler, Esquire
11140 Rockville Pike
Rockville, MD  20852-3150

Angelo Stambules, Vice President
Capmark Finance, Inc.
Hospitality Lending Group
1600 Tysons Boulevard, Suite 1100
McLean, VA  22102-4874

Darek S. Bushnaq, Esquire
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, MD  21202-3157

Forrest T. Passerin, Esquire
Peter S. Clark, II, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103-7301

HospiComm, Inc.
41 North 3rd Street, Suite 200
Philadelphia, PA  19106

National Penn Bank
400 Creekside Drive, Suite 402
Pottstown, PA  19464-9219

National Penn Bank
Attention: James Duggan
90 Highland Avenue
Bethlehem, PA  18017-9408

Softbrands
c/o Joyette Dean
40 General Warren Blvd, Suite 110
Malvern, PA  19355-1247

Peter J. Benvenutti, Esquire
Robert A. Trodella, Esquire
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104-1602

Matthew G. Summers, Esquire
Ballard Spahr, LLP
919 North Market Street, 11th Floor
Wilmington, DE  19801

Marjorie Waldman, President
The Stroud Group
9130 Red Branch Road, Suite S
Columbia, MD  21045